UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURE SOURCE CLAIMS COMPANY, LLC,<br><br>                        Plaintiff,<br><br>        -against-<br><br>EDWARD F. MILLER, FINE CRAFTSMAN GROUP, LLC, USDG, LLC, ROE SITE MANAGEMENT, LLC, MICHAEL PIUMELLI, GIOVANNA BATTAGLIA, MARGARET MILLER, KEVIN ROE, SEGOVIA CONSTRUCTION LLC, KRZYSZTOF POGORZELSKI, JOSE SEGOVIA, SAMANTHA BUSTAMANTE, ERIC SCOTT and ROMO MACHINE, LLC,<br><br>                    Defendants. | 22-CV-9764 (JGLC) (OTW)<br><br>**<u>OPINION AND ORDER</u>** |

JESSICA G. L. CLARKE, United States District Judge:

Plaintiff Secure Source Claims Company, LLC ("Plaintiff" or "SSCC"), as assignee of claims of 125 Broad CHP ("125 CHP"), brings this action alleging substantive violations of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962(c), conspiracy to violate RICO, 18 U.S.C. § 1962(d), as well as state law claims for fraud, aiding and abetting fraud, conspiracy to commit fraud, conversion, aiding and abetting conversion, breach of fiduciary duty, diversion of trust assets and unjust enrichment. *See* ECF No. 47 ("First Amended Complaint" or "FAC"). Two groups of Defendants moved to dismiss the Complaint. The first motion to dismiss (ECF No. 100) was filed by Fine Craftsman Group, LLC ("FCG"), Krzysztof Pogorzelski and Eric Scott (collectively, the "FCG Defendants"). The second motion to dismiss (ECF No. 105) was filed by Edward F. Miller, USDG, LLC, Michael Piumelli, Segovia Construction LLC, Jose Segovia and Samantha Bustamante (collectively, the "Miller Defendants").

This case is referred to Magistrate Judge Wang for general pretrial purposes and dispositive motions requiring a report and recommendation. ECF No. 20. On February 22, 2024, Judge Wang recommended that both motions to dismiss be denied in their entirety. ECF No. 138 ("R&R") at 15. On March 11, 2024, the FCG Defendants timely filed an objection to the R&R. ECF No. 142. The Miller Defendants neither filed a reply brief in support of their motion nor an objection to the R&R. For the reasons stated herein, the R&R is ADOPTED in part and REJECTED in part. The Miller Defendants' motion to dismiss is DENIED, and the FCG Defendants' motion to dismiss is GRANTED in part and DENIED in part.

## LEGAL STANDARDS

The Court sets forth the legal standards governing review of a magistrate judge's report and recommendation and a motion to dismiss for failure to state a claim.

## I.      Review of Report and Recommendation

A district court reviewing a magistrate judge's report and recommendation may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). Within fourteen days after the magistrate judge has issued their report and recommendation, "any party may serve and file written objections to such proposed findings and recommendations." *Id.*; *see also* Fed. R. Civ. P. 72(b)(2). A district court reviews *de novo* the portions of the report and recommendation to which objection is made. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b)(3); *see also Ortiz v. Barkley*, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008). For portions of the report and recommendation to which no timely objection has been made, "a district court need only satisfy itself that there is no clear error on the face of the record." *Fischer v. Forrest*, 286 F. Supp. 3d 590, 600 (S.D.N.Y. 2018), *aff'd*, 968 F.3d 216 (2d Cir. 2020) (internal citation omitted). "To the extent that the objecting party makes

only conclusory or general objections, or simply reiterates the original arguments, the court will review the report and recommendation strictly for clear error." *Giallanzo v. City of New York*, 630 F. Supp. 3d 439, 450 (S.D.N.Y. 2022). Finally, "new arguments and factual assertions cannot properly be raised for the first time in objections to the report and recommendation, and indeed may not be deemed objections at all." *Piligian v. Icahn Sch. of Med. at Mount Sinai*, 490 F. Supp. 3d 707, 716 (S.D.N.Y 2020) (internal citation omitted).

## II.    Motion to Dismiss

In reviewing a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must "constru[e] the complaint liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." *Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008) (internal citation omitted). A claim will survive a Rule 12(b)(6) motion only if the plaintiff alleges facts sufficient "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*. at 679. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. at 678. If a complaint does not state a plausible claim for relief, it must be dismissed. *Id*. at 679.

## DISCUSSION

The Court adopts the recitation of facts[1] set forth in the R&R and assumes the parties' familiarity therewith. The Court will repeat only those facts relevant to consideration of the FCG Defendants' objections. The gravamen of Plaintiff's allegations against the FCG Defendants is that – pursuant to FCG's role as construction manager of a green energy project (the "Project") – the FCG Defendants repeatedly paid invoices they knew were fraudulent, at the direction of Defendant Ed Miller, the leader of the enterprise. FAC ¶¶ 5, 115, 117, 139, 144.

The R&R advised the parties that they had fourteen days from receipt of the R&R to file any objections and warned that failure to timely file such objections would result in waiver of any right to object. R&R at 15–16. In addition, the R&R expressly called the parties' attention to Rule 72 of the Federal Rules of Civil Procedure and 28 U.S.C. § 636(b)(1). Nevertheless, as of the date of this Order, the Miller Defendants have not filed any objections or made a request for an extension of time to object. Accordingly, the Miller Defendants have waived the right to object to the R&R or to obtain appellate review. *See Frank v. Johnson*, 968 F.2d 298, 300 (2d Cir. 1992). Despite the waiver, and unguided by objections, the Court has reviewed the R&R and finds it to be well reasoned and grounded in fact and law with respect to denial of the Miller Defendants' motion. Accordingly, the R&R is ADOPTED in this respect and the Miller Defendants' motion is DENIED.[2]

The FCG Defendants timely filed objections to the R&R, *see* ECF No. 142 ("Obj."), which the Court considers pursuant to the standards for reviewing a magistrate judge's report and

---

[1] R&R (ECF No. 138) at 2–6.

[2] To the extent the Miller Defendants' motion overlaps with the FCG Defendants' objection, it is also denied for the reasons set forth herein.

recommendation set forth above. The Court notes that many of the FCG Defendants' objections in large part reiterate their arguments already made to Judge Wang; indeed, many sections of the FCG Defendants' objections are copied verbatim from their original brief. *See* ECF No. 101. Nonetheless, the objections are "sufficiently detailed to allow meaningful review of the R&R without needlessly duplicating the efforts of the magistrate judge" and "in any event, the outcome of the case is not affected by the Court's decision to address Plaintiff's objections." *Pirog v. Colvin*, No. 15-CV-438 (KMK), 2016 WL 5476006, at *3 (S.D.N.Y. Sept. 28, 2016) (internal citations omitted). Thus, the Court considers these arguments.

The FCG Defendants abandon their standing argument contesting the validity of 125 CHP's assignment of claims to SSCC as well as their *Colorado River* abstention argument. Unguided by objections, the Court has reviewed the R&R and finds no clear error with respect to its conclusions that SSSC has standing and that abstention is not warranted here. Nonetheless, the Court briefly addresses *Colorado River* abstention in Section III. Judge Wang's recommendations with respect to these issues are ADOPTED.

The Court now considers the portions of the R&R to which there are objections. The Court finds that Plaintiff has adequately pled the challenged prongs of a civil RICO claim, except with respect to Defendant Scott. Specifically, the FAC establishes an open-ended pattern of racketeering activity and the existence of an association-in-fact enterprise, except with respect to Defendant Scott. Thus, the substantive RICO claim largely survives the motion to dismiss and, following form, so does the RICO conspiracy claim. Next, the Court briefly addresses the rule against claims-splitting and the *Colorado River* abstention doctrine, finding that neither bars this action. Finally, the Court finds that all the state law claims survive the FCG Defendants' motion because they are not duplicative of the breach of contract action in state court.

## I.   Plaintiff States RICO Claims Against Defendants FCG and Pogorzelski

To establish a civil RICO claim pursuant to 18 U.S.C. § 1962(c), "a plaintiff must plead the following elements: '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Needham & Co, LLC v. Access Staffing, LLC.*, No. 15-CV-2487 (NRB), 2016 WL 4399288, at *12 (S.D.N.Y. Aug. 12, 2016) (quoting *DeFalco v. Bernas*, 244 F.3d 286, 306 (2d Cir. 2001)). "RICO defines racketeering activity to mean 'any act which is indictable' under specified provisions of Title 18," including mail and wire fraud. *Yien-Koo King v. Wang*, No. 14-CV-7694 (LJL), 2020 WL 6875403, at *20 (S.D.N.Y. Nov. 23, 2020); *see also* 18 U.S.C. § 1961(1). Because civil RICO actions carry "the carrot of treble recovery and the availability of a federal forum," courts carefully scrutinize RICO claims at the motion to dismiss stage. *Acklin v. Eichner*, No. 20-CV-7042 (GHW), 2021 WL 4442819, at *5 (S.D.N.Y. Sept. 27, 2021) (internal citation omitted). Such scrutiny is particularly appropriate where, as here, RICO claims are premised exclusively on predicate acts of mail or wire fraud due to "the relative ease with which a plaintiff may mold a RICO pattern from allegations that, upon closer scrutiny, do not support it." *Bayshore Cap. Advisors, LLC v. Creative Wealth Media Fin. Corp.*, 667 F. Supp. 3d 83, 125 (S.D.N.Y. 2023) (internal citation omitted).

Despite the FCG Defendants' assertions to the contrary, *see* Obj. at 3–4, 14, civil RICO claims are generally subject to the notice pleading requirements of Federal Rule of Civil Procedure 8(a); the heightened pleading requirements of Rule 9(b) apply only to the alleged predicate acts involving fraud. *See Spinale v. United States*, No. 03-CV-1704 (KMW) (JCF), 2004 WL 50873, at *5 (S.D.N.Y. Jan. 9, 2004); *Paul Hobbs Imports Inc. v. Verity Wines LLC*, No. 21-CV-10597 (JPC), 2023 WL 374120, at *4 (S.D.N.Y. Jan. 24, 2023). Here, Plaintiff alleges that predicate acts of mail and wire fraud were used to effect a fraudulent invoicing scheme. FAC ¶¶ 105, 147, 154–55, 157–58. While the FCG Defendants erroneously attempt to

apply heightened pleading requirements to other elements of Plaintiff's RICO claims, *see* Obj. at 3–4, 14, they do not contest the element to which Rule 9(b) actually does apply: whether the predicate mail and wire fraud acts are pled with particularity. Accordingly, the FCG Defendants' argument that the R&R erred in not applying the heightened pleading standard holds no weight.

The Court turns to the elements the objectors contest, finding in turn that Plaintiff's allegations establish an open-ended pattern of racketeering activity and a RICO enterprise in the form of an association-in-fact.

### A.  Plaintiff Establishes an Open-Ended Pattern of Racketeering Activity

"A plaintiff in a RICO action must allege either an open-ended pattern of racketeering activity (i.e., past criminal conduct coupled with a threat of future criminal conduct) or a closed-ended pattern of racketeering activity (i.e., past criminal conduct extending over a substantial period of time)." *First Cap. Asset Mgmt., Inc. v. Satinwood, Inc.*, 385 F.3d 159, 180 (2d Cir. 2004) (internal citation omitted). These patterns are also referred to as open-ended or closed-ended "continuity." The Court analyzes each in turn.

### 1.  Closed-Ended Continuity

To plead a closed-ended continuity in the Second Circuit, a RICO plaintiff generally must plead predicate acts spanning at least two years. *See MinedMap, Inc. v. Northway Mining, LLC*, No. 21-1480, 2022 WL 570082, at *1 (2d Cir. Feb. 25, 2022); *see also Spool v. World Child Int'l Adoption Agency*, 520 F.3d 178, 184 (2d Cir. 2008) (noting that two years is not a bright-line rule but is generally required to establish closed-ended continuity). Moreover, even if the two-year requirement is satisfied, the court must take care to distinguish "garden variety breach of contract and tort claims" from those of a "large-scale civil RICO claim" by analyzing non-dispositive

factors, including "the number and variety of predicate acts, the complexity and number of the schemes, and the number of participants and victims." *MinedMap, Inc*., 2022 WL 570082, at *2.

Plaintiff fails to establish a closed-ended continuity. "[T]he duration of a pattern of racketeering activity is measured by the RICO predicate acts the defendants commit." *Paul Hobbs Imports*, 2023 WL 374120, at *1 (quoting *Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc.*, 187 F.3d 229, 243 (2d Cir. 1999)); *see also Spool*, 520 F.3d at 184 (internal citation omitted) ("The relevant period, moreover, is the time during which RICO predicate activity occurred, not the time during which the underlying scheme operated or the underlying dispute took place."). The FAC states that predicate acts alleged therein "span[] a period of more than fifteen months." FAC ¶ 166.[3] Plaintiff appears to allege that the first predicate act occurred on or about July 15, 2021, *id*. ¶ 56, then calculates the 15-month[4] figure from July 2021 until it filed this case on November 16, 2022. *See* ECF No. 1. This figure is premised on Plaintiff's allegation that, "from April 2021 to the present," Defendants have been engaged in a racket that continues to defraud other victims even after Defendant Miller's termination from the Project in April 2022. FAC ¶¶ 119, 123–31, 163–65, 170–73. However, the last predicate act pled in the FAC occurred on or about April 11, 2022. *Id*. ¶ 91. The period from July 15, 2021 (the first pled predicate act) to April 11, 2022 (the last pled predicate act) yields a pattern of racketeering activity spanning only nine months. The FAC also refers generally to a period of predicate acts beginning in April 2021 and ending in April 2022, a period of 12 months. *Id*. ¶¶ 105, 155, 201,

---

[3] Plaintiff also inconsistently uses the "more than fifteen month" period to refer to the length of the RICO conspiracy or the overall scheme rather than the predicate mail and wire fraud acts. *See* FAC ¶¶ 49, 144(a), 233.

[4] July 15, 2021 to November 16, 2022 is a 16-month period.

239–40. And even Plaintiff's 15-month figure still falls considerably short of the 24-month threshold.

Although "closed-ended continuity is primarily a temporal concept," *DeFalco v. Bernas*, 244 F.3d 286, 321 (2d Cir. 2001), the Court also considers the non-dispositive factors, namely, "the number and variety of predicate acts, the complexity and number of the schemes, and the number of participants and victims." *MinedMap*, 2022 WL 570082, at *1. These factors are at best neutral here, considering that the predicate acts described with particularity[5] in the FAC consist entirely of mail and wire fraud perpetrated against a single victim.[6] Because neither the two-year threshold nor the non-dispositive factors weigh in its favor, Plaintiff has not established closed-ended continuity. The R&R's conclusion to the contrary is rejected.

## 2. Open-Ended Continuity

Although a close question, Plaintiff has pled open-ended continuity. "To satisfy open-ended continuity, the plaintiff need not show that the predicates extended over a substantial period of time but must show that there was a threat of continuing criminal activity beyond the period during which the predicate acts were performed." *Cofacredit, S.A.*, 187 F.3d at 242. Examples of such a threat of continuing criminal activity include situations where: (1) the predicate acts are "inherently unlawful" such that they necessarily involve a distinct threat of continued criminal activity (*e.g.*, murder or obstruction of justice); (2) the predicate acts were part of defendants' "regular way" of doing business; or (3) the predicate acts can be attributed to

---

[5] "[A]s with closed-ended continuity, open-ended continuity must be evaluated based only on the predicate acts adequately pled in the complaint." *Paul Hobbs Imports*, 2023 WL 374120, at *11.

[6] The presence of only a single victim or a single scheme does not preclude closed-ended continuity, but may weigh against plaintiff in analysis of the non-dispositive factors. *See Spool*, 520 F.3d at 184; *Yien-Koo King*, 2020 WL 6875403, at *23.

a defendant operating as part of a "long-term association that exists for criminal purposes." *Paul Hobbs Imports*, 2023 WL 374120, at *11–12; *see also Bayshore*, 667 F. Supp. 3d at 136. The Court may also look to the particular aspects of the alleged enterprise to infer "that the defendants will likely engage in further racketeering activity in the future." *Paul Hobbs Imports*, 2023 WL 374120, at *12.

Open-ended continuity cannot be established if the scheme is "inherently terminable," *i.e.*, it will naturally terminate once a certain event occurs, such as when a single victim has no assets left to strip or when an event of default neutralizes defendants' ability to continue looting assets. *Id*. The racketeering activity here is not "inherently terminable," despite the FCG Defendants' insistence to the contrary. *See* Obj. at 11. The alleged racketeering activity continued to defraud other victims after Defendant Miller's termination from the Project in April 2022. *See* R&R at 10–11; FAC ¶¶ 119, 123–31, 163–65, 170–73. While the FCG Defendants protest that they no longer have a relationship with Miller, *see* Obj. at 11, Plaintiff's allegations, which are presumed true for the purpose of this Motion, are that none of the Defendants have dissociated from the scheme. *See* FAC ¶¶ 162, 173. Even if the objectors' premise is true, this argument provides no basis to dismiss the FCG Defendants because they allegedly participated in numerous predicate acts that are part of the alleged scheme. *See Elsevier Inc. v. W.H.P.R., Inc.*, 692 F. Supp. 2d 297, 306 (S.D.N.Y. 2010) ("The fact that not every individual defendant is alleged to have engaged in fraudulent activity for [the] entire period is of no moment for longevity purposes, since (as is well known) a person can join in some ongoing fraudulent activity at any point."); *Crawford v. Franklin Credit Mgmt. Corp.*, 758 F.3d 473, 487 (2d Cir. 2014) (emphasis added) ("To establish a violation of § 1962(c), a plaintiff must show that the defendant conducted, or *participated* in the conduct, of a RICO enterprise's affairs through a

pattern of racketeering activity."); *United States v. Pizzonia*, 577 F.3d 455, 465 (2d Cir. 2009) (emphasis added) ("RICO's pattern element thus serves to ensure that a defendant's criminal *participation* in an enterprise is not merely isolated or sporadic, but indicative of the sort of continuity of criminal activity—or the threat of continuity—that is the hallmark of racketeering.").

The "inherently unlawful" category is plainly inapplicable here. The predicate acts alleged in the FAC consist of mail and wire fraud. It is well-established that fraud does not imply a threat of continued criminal activity in the RICO continuity context. *See Bayshore*, 667 F. Supp. 3d at 136.

Whether racketeering was Defendants' regular way of doing business is a closer question. The FCG Defendants argue that FCG primarily conducts a legitimate business, as reflected by the fact that it "performed millions of dollars of work on the Project which was accepted and approved . . . ." Obj. at 10–11. Plaintiff appears to allege that Defendants succeeded[7] in perpetrating a fraud in the amount of approximately $631,600, *see* FAC ¶¶ 7–9, 54, and that Defendants' racketeering activity continues into the present, defrauding other victims. *See* R&R at 10–11; FAC ¶¶ 119, 123–31, 163–65, 170–73. It may be that Defendants regularly submitted fraudulent invoices alongside legitimate ones to minimize detection of the fraud. Racketeering need not represent the majority of the business to be a staple of it. Discovery will shed light on whether Defendants engaged in the alleged racketeering; drawing all inferences in Plaintiff's favor, as the Court must at this stage, it is plausible that fraudulent invoicing was (and is) part of

---

[7] Plaintiff alleges Defendant Romo submitted an additional $600,000 in fraudulent invoices; however, it is unclear whether Plaintiff alleges this was ever paid. *See* FAC ¶¶ 92, 155(b), 273. It is similarly unclear how Plaintiff calculates fraudulent invoices totaling "millions of dollars." *Id.* ¶¶ 13, 53, 168.

Defendants' regular way of doing business. Moreover, considering the alleged facts particular to this case – including the Miller Defendants' misappropriation of 125 CHP's information for the benefit of their new company, *see* R&R at 5–6, 11 – the Court finds it a plausible inference "that the defendants will likely engage in further racketeering activity in the future." *Paul Hobbs Imports*, 2023 WL 374120, at *11 (internal citation omitted). Accordingly, the Court finds there is a plausible threat of continuing criminal activity sufficient to establish open-ended continuity. Because a RICO plaintiff may plead either open- or closed-ended continuity, the FAC satisfies the pattern of racketeering requirement.

### B. Plaintiff Establishes an Association-In-Fact Enterprise Except With Respect to Defendant Scott

An "association-in-fact" RICO enterprise consists of three features: "(1) a purpose, (2) relationships among the individuals associated with the enterprise, and (3) longevity sufficient to permit the associates to pursue the purpose of the enterprise." *Yien-Koo King*, 2020 WL 6875403, at *18. Judge Wang found all three elements satisfied. R&R at 13–14. Setting aside conclusory arguments, *see* R&R at 13, and the erroneous suggestion that Rule 9(b) applies to these elements, the FCG Defendants only object with respect to the second element, arguing that Plaintiff fails to adequately explain "each defendant's alleged role in the alleged wrongful conduct." Obj. at 6.[8] Because the FAC details the relationships between the Defendants and the role that each Defendant played in the enterprise, *see* R&R at 13, this argument is largely meritless. *See Needham*, 2016 WL 4399288, at *13 (denying motion to dismiss where plaintiff described the "personal and professional relationships among members and describes the roles of

---

[8] This argument could also be construed as challenging the "racketeering activity" prong of a civil RICO claim, *i.e.*, whether each individual defendant has committed racketeering activity. To the extent the FCG Defendants' brief makes out such an objection, it is also rejected for the reasons set forth in this section.

each defendant" in a false invoicing scheme). For the reasons set forth below, the only exception to the foregoing is with respect to Defendant Scott.

Plaintiff "must adequately plead that each individual defendant has committed racketeering activity." *Bayshore*, 667 F. Supp. 3d at 124; *see also DeFalco*, 244 F.3d at 306 ("The requirements of section 1962(c) must be established as to each individual defendant."). Even where a plaintiff has sufficiently pled the hierarchy, organization and activities of the alleged enterprise, it must "explain each participant's role in the alleged course of fraudulent or illegal conduct" and not merely lump a defendant into the enterprise by relying on group pleading for "nearly every allegation" against said defendant. *Acklin*, 2021 WL 4442819, at *5.

Plaintiff relies on "slapdash group pleading" with respect to Defendant Scott. *Id*. While Plaintiff makes more specific and detailed allegations against the other FCG Defendants – FCG and Pogorzelski – every allegation of Defendant Scott's role in the enterprise is group pled except for a single conclusory sentence twice repeated. FAC ¶¶ 303, 316 ("Scott had knowledge of the fraud because he knowingly instructed Segovia and SC to submit fraudulent invoices to FCG."). This dearth of specific allegations is particularly telling when compared to the specific allegations of Pogorzelski's role in the invoicing scheme. *See id*. ¶¶ 105, 107–09, 144(f). Unlike Pogorzelski, Scott is allotted no separate paragraph in the section of the FAC setting forth the roles of each member of the enterprise. See *id*. ¶ 144. Scott is merely lumped into general, group-pled allegations that do not adequately specify his role. *See id*. ¶¶ 144(a), (b), (h), (i), 146–47. Scott is repeatedly left out of the allegations made against the other FCG Defendants detailing their role in the enterprise led by Defendant Miller. *See, e.g.*, *id*. ¶¶ 47, 57–58, 98, 101, 139. Comparison to the more specific allegations against FCG and the Miller Defendants further exposes the deficient pleading with respect to Scott. *See* ECF No. 143 ("Pl. Br.") at 8. Moreover,

the insinuation of guilt by association stemming from Scott's longstanding relationship with Defendant Miller does not suffice to establish Scott's role in the enterprise. *See* FAC ¶ 25. The Court is far from convinced that "[t]he FAC leaves no doubt that [] Scott [] participated in the operation and management of the enterprise as [a] vital actor[] who enabled the scheme." Pl. Br. at 8 (internal citation and quotation marks omitted).

Accordingly, the role of the FCG Defendants in the enterprise has been established with respect to FCG and Pogorzelski but not with respect to Scott. Unguided by objections, and having already found open-ended continuity, the Court finds no clear error in the R&R's conclusion that the purpose and longevity of the enterprise are established here. Thus, Plaintiff has established a RICO enterprise in the form of an association-in-fact, except with respect to Defendant Scott.

### C.  The RICO Conspiracy Claim is Not Dismissed

Setting aside the erroneous Rule 9(b) argument, the FCG Defendants move to dismiss the RICO conspiracy claim based wholly on their premise that the substantive RICO claim fails. *See Angermeir v. Cohen*, 14 F. Supp. 3d 134, 156 (S.D.N.Y. 2014) (applying Rule 8(a) pleading requirements to RICO conspiracy claim). Accordingly, "this argument fails because the Court has declined to dismiss the substantive RICO claim." *Id.* at 154; *see also Needham*, 2016 WL 4399288, at *14.

## II.    Neither the Rule Against Claims-Splitting Nor the *Colorado River* Abstention Doctrine Applies

The FCG Defendants seek to dismiss this action because they aver that 125 CHP and SSCC are "splitting causes of action and prosecuting the split claims in multiple litigations." Obj. at 20. This argument is based on the fact that, on September 13, 2022, FCG sued 125 CHP for breach of contract in New York state court and, on November 21, 2022, 125 CHP filed a

counterclaim for breach of contract and willful exaggeration of liens. *See* ECF Nos. 100-4, 100-5, 100-7. In the intervening months, 125 CHP assigned its claims (excluding its breach of contract claim against FCG) to SSCC and SSCC commenced this action. ECF Nos. 1, 47-1.

The FCG Defendants maintain that this action violates the rule against claims-splitting. Obj. at 20–22. However, "the rule against claims-splitting [] applies only to duplicative suits in *federal* court." *Reliability Inc. v. Doki*, No. 20-CV-7109 (KPF), 2021 WL 3408589, at *9 (S.D.N.Y. Aug. 4, 2021) (emphasis added) (internal citation omitted); *see also Curtis v. Citibank, N.A.*, 226 F.3d 133, 138 (2d Cir. 2000) (emphasis added) ("As part of its general power to administer its docket, a district court may stay or dismiss a suit that is duplicative of another *federal* court suit."). Because the breach of contract action is proceeding in state court, the rule against claims-splitting is plainly inapplicable here.

Moreover, the Supreme Court has observed that "[g]enerally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 817 (1976) (internal citation and quotation marks omitted). However, under the *Colorado River* abstention doctrine, a federal court may decline to hear a case when parallel state court proceedings are pending and "reasons of wise judicial administration" counsel dismissal. *Id.* at 818. As noted previously, the FCG Defendants have abandoned their *Colorado River* abstention argument. Nonetheless, unguided by objections, and considering the six *Colorado River* factors, the Court finds no clear error with respect to the R&R's conclusion that abstention is not warranted here.

**III.    The State Law Claims Are Not Dismissed**

Plaintiff asserts the following eight state law claims against one or more of the FCG

Defendants: (1) common law fraud; (2) conspiracy to commit civil fraud; (3) aiding and abetting

fraud; (4) conversion; (5) aiding and abetting conversion; (6) breach of fiduciary duty; (7) unjust

enrichment; and (8) diversion of trust assets. FAC ¶¶ 218–275, 284–319; *see also* Pl. Br. at 15

n.2. The FCG Defendants argue that the state law claims should be dismissed because they are

duplicative of 125 CHP's counterclaim in the state court breach of contract action. Obj. at 15–20.

These arguments fail for the same reason identified by Judge Wang with respect to the fraud

claims: the state law claims against the FCG Defendants are not duplicative of 125 CHP's

counterclaim, which only asserts claims for breach of contract and willful exaggeration of liens.

*See* R&R at 14; ECF No. 100-4. Here, the wrongdoing alleged in the FAC stretches far beyond

FCG's contemplated performance under its contract with 125 CHP. Plaintiff has alleged "a wide-

ranging fraud involving multiple parties" who were not party to any contract with 125 CHP or

SSCC – among them Defendants Pogorzelski and Scott – including 13 Defendants who are not

party to the state court action. R&R at 14.

The Court sets forth five additional reasons why dismissal of the state law claims is

unwarranted. First, with respect to the fraud claims, "[w]hile it is true that a contract action

cannot be converted to one for fraud merely by alleging that the contracting party did not intend

to meet its contractual obligations, a fraud claim may be dismissed as duplicative only as against

a defendant against whom the related contract claim is viable." *Sun Prod. Corp. v. Bruch*, 507 F.

App'x 46, 47–48 (2d Cir. 2013) (internal citations and quotation marks omitted). Here,

Pogorzelski and Scott were not party to the contract with 125 CHP, and the fraud allegations

relate to the invoicing scheme rather than merely a repackaged assertion that FCG fraudulently

induced 125 CHP to contract without intending to perform. Thus, Plaintiff's common law fraud claim is not duplicative of 125 CHP's counterclaim in the breach of contract action. This logic extends to the conspiracy to commit civil fraud and aiding and abetting fraud claims, as the FCG Defendants seek dismissal of those claims based wholly on the rejected premise that the substantive fraud claim fails.

Second, with respect to the conversion claim, "if the plaintiff can recover punitive damages under a conversion claim and cannot recover punitive damages under a breach of contract claim, then the punitive damages constitute unique recovery under the conversion claim and the claim is not duplicative of the breach of contract claim." *M&K Imports, LLC v. Rejuveneda Med. Grp., Inc.*, No. 22-CV-2606 (VB), 2023 WL 159790, at *6 (S.D.N.Y. Jan. 11, 2023) (internal citation omitted). The recovery sought in this action, which includes punitive damages, is distinct from what 125 CHP can recover in the breach of contract action. *See* FAC at 58. Cases finding that "punitive damages are not available for fraud claims arising from a contractual relationship between the parties" are inapplicable here because Plaintiff has alleged wrongdoing "that extend[s] far beyond any alleged contractual agreement between the parties." *Marini v. Adamo*, 812 F. Supp. 2d 243, 271–72 (E.D.N.Y. 2011). Because the conversion claim is not duplicative of 125 CHP's counterclaim, neither is the aiding and abetting conversion claim.

Third, with respect to the breach of fiduciary duty claim, Plaintiff has plausibly alleged that FCP and Pogorzelski were empowered to act as 125 Broad's agent with respect to the Project, *see* FAC ¶¶ 44–45, 226–27, then betrayed that trust by perpetrating the invoicing fraud racket. These facts plausibly allege a "breach of a duty arising out of the relationship created by contract but which is independent of the contract itself." *Rhoda v. Rhoda*, No. 14-CV-6740 (CM), 2017 WL 11530950, at *20 (S.D.N.Y. June 22, 2017).

Fourth, with respect to the unjust enrichment claim, for the same reasons previously stated, the wide-ranging scheme alleged herein sweeps far broader than mere breach of contract. Thus, this claim is not duplicative. *See Picture Pats., LLC v. Aeropostale, Inc.*, No. 07-CV-5567 (JGK), 2009 WL 2569121, at *3 (S.D.N.Y. Aug. 19, 2009) ("Because the subject matter of the breach of contract claim differs from the subject matter of the unjust enrichment and conversion claims, they are not duplicative.").

Finally, with respect to diversion of trust assets, the FCG Defendants provide no basis to support their conclusory assertion that this claim is duplicative of 125 CHP's counterclaim for willful exaggeration of liens. Under New York Lien Law Article 3-A, any application of trust assets for a purpose other than those specifically permitted by Article 71 is deemed a diversion of trust assets. N.Y. Lien Law § 79-a; *see also* 4G N.Y. Prac., Com. Litig. in New York State Courts § 149:14 (5th ed.). The only case FCG Defendants cite found a Lien Law Article 3-A claim duplicative where premised on "defendants' alleged failure to properly perform the work" set forth in the contract rather than "a breach of defendants' purported duty to pay subcontractors." *320 W. 115 Realty LLC v. All Bldg. Constr. Corp.*, 149 N.Y.S.3d 28, 30 (1st Dept 2021). Here, Plaintiff alleges not simply that FCG failed to perform under the contract but that FCG improperly diverted trust funds to pay itself and subcontractors for work that was not performed on the Project. FAC ¶¶ 252–53. Thus, this claim is not duplicative.

Accordingly, none of the state law claims against the FCG Defendants are dismissed.

## IV.    Plaintiff is Granted Leave to Amend

The Second Circuit "strongly favors liberal grant of an opportunity to replead after dismissal of a complaint under Rule 12(b)(6)." *Noto v. 22nd Century Grp., Inc.*, 35 F.4th 95, 107 (2d Cir. 2022). "When a motion to dismiss is granted, 'the usual practice is to grant leave to

amend the complaint.'" *Golla v. Neovasc, Inc.*, No. 22-361, 2023 WL 2469770, at *3 (2d Cir. Mar. 13, 2023) (quoting *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)). Plaintiff has not asked the Court for leave to amend the FAC, "[b]ut even when a party does not ask for leave to amend, the Court may grant leave to amend *sua sponte*." *In re Garrett Motion Inc. Sec. Litig.*, No. 20-CV-7992 (JPC), 2022 WL 976269, at *18 (S.D.N.Y. Mar. 31, 2022) (internal citation and quotation marks omitted) (collecting cases). "When deciding whether to *sua sponte* grant leave to amend, courts will consider many factors, including undue delay, bad faith or dilatory motive, repeated failure to cure deficiencies, undue prejudice to the opposing party, and futility." *Paul Hobbs Imports*, 2023 WL 374120, at *15 (internal citation and quotation marks omitted). Considering these factors, the Court grants Plaintiff leave to file a Second Amended Complaint to the extent that Plaintiff believes it can plead facts that would adequately state a RICO claim with respect to Defendant Scott.

## CONCLUSION

For the reasons set forth herein, the R&R is ADOPTED in part and REJECTED in part. The Court finds that Plaintiff has not adequately alleged Defendant Scott's role in the enterprise; accordingly, the RICO claims are DISMISSED without prejudice with respect to Defendant Scott. In all other respects, the FCG Defendants' motion to dismiss is DENIED. To the extent Plaintiff believes it can plead facts that would adequately state a RICO claim with respect to Defendant Scott, the Court grants Plaintiff leave to file a Second Amended Complaint no later than **April 29, 2024**.

For the reasons stated herein, and unguided by objections, the Court also DENIES the Miller Defendants' motion to dismiss.

The Clerk of Court is directed to terminate ECF Nos. 100 and 105.

Dated: March 29, 2024
       New York, New York

SO ORDERED.

JESSICA G. L. CLARKE
United States District Judge